## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE MEYER and TAMARA WILLIAMS**,** on behalf of themselves and all others similarly situated, | Case No.: _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WELLTOK, INC. and PROGRESS SOFTWARE CORPORATION, | |
| Defendants. | |

Plaintiffs, Denise Meyer and Tamara Williams ("Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against Defendant WellTok, Inc. ("WellTok") and Defendant Progress Software Corporation ("PSC") (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents, as to all other matters:

### INTRODUCTION

1.     Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similarly situated WellTok clients' patients' and/or employees' sensitive information, including their full names, dates of birth, email addresses, phone numbers, Social Security numbers, ("personally identifiable information" or "PII") and medical and treatment information, which is protected health information ("PHI" and collectively with PII, "Private Information") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

2.     Defendant WellTok is a "consumer activation company" that provides products

and/or services to "healthcare organizations" and other companies.[1]

3.     Defendant PSC advertises itself as an "experienced, trusted provider of products designed with you, our customers, in mind. With Progress, you can build what you need, deploy where and how you want, empower your customers, then manage it all safely and securely."[2]

4.     Upon information and belief, former and current patients and/or employees of WellTok's clients are required to entrust Defendants with sensitive, non-public Private Information, without which Defendants could not perform their regular business activities, in order to obtain healthcare services and/or employment from WellTok's clients. Defendants retain this information for at least many years and even after the relationship has ended.

5.     By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

6.     On July 26, 2023, WellTok learned that Pension Benefit Information, LLC's network, to whom PSC provided software services, and for which WellTok relied on for the sending and receiving of sensitive information, had been penetrated by a cyberattack.[3] In response, WellTok "launch[ed] an additional investigation with the assistance of third-party cybersecurity specialists . . . to determine the potential for a hidden presence of vulnerabilities on the MOVEit Transfer server and the security of data housed on the server."[4] As a result of the investigation, WellTok concluded—on August 11, 2023—that "an unknown actor exploited software

---

[1] https://www.linkedin.com/company/welltok-inc-/
[2] https://www.progress.com/company
[3] The "Notice Letter". A sample copy is available at https://apps.web.maine.gov/online/aeviewer/ME/40/df6b65ea-c8fb-4a62-a5e8-53fec501fabb.shtml
[4] Id.

vulnerabilities, accessed the MOVEit Transfer server on May 30, 2023, and exfiltrated certain data from the MOVEit Transfer server during that time."[5]

7.     According to the Notice of Data Breach letter sent by WellTok, on behalf of Defendants, to Plaintiffs and other victims of the Data Breach (the "Notice Letter"), the compromised Private Information included individuals' full names, dates of birth, email addresses, phone numbers, Social Security numbers, health insurance information, provider names, treatment costs information, and treatment information or diagnoses.[6]

8.     Defendants failed to adequately protect Plaintiffs' and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect patients' and employees' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

9.     Plaintiffs bring this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts at least to negligence and violates federal and state statutes.

_____

[5] *Id.*
[6] *Id.*

10.     Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures and ensure those measures were followed by their IT vendors to ensure that the Private Information of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

11.     Plaintiffs and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

12.     Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and

stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data security practices.

## PARTIES

13.    Plaintiff, Denise Meyer, is, and at all times mentioned herein was, an individual and citizen of Auburn, California.

14.    Plaintiff, Tamara Williams, is, and at all times mentioned herein was, an individual and citizen of Roseville, Michigan.

15.    Defendant, WellTok, Inc., is a corporation incorporated under the state laws of Delaware with its principal place of business located in Denver, Colorado. WellTok's registered agent is located and may be served at 1900 West Littleton Boulevard, Littleton, Colorado 80120.

16.    Defendant, Progress Software Corporation, is a Delaware corporation and maintains its headquarters and principal place of business at 15 Wayside Road, 4th Floor, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of Massachusetts and have different citizenship from Defendants, including Plaintiffs. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A)

18.    This Court has jurisdiction over Defendants because Defendants operate in this District.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant PSC's principal place of business is located in this District, a substantial part of the

events giving rise to this action occurred in this District, and Defendants have harmed Class Members residing in this District.

## FACTUAL ALLEGATIONS

### *Defendants' Businesses*

20.     Defendant WellTok is a "consumer activation company" that provides products and/or services to "healthcare organizations" and other companies.[7]

21.     Defendant PSC advertises itself as an "experienced, trusted provider of products designed with you, our customers, in mind. With Progress, you can build what you need, deploy where and how you want, empower your customers, then manage it all safely and securely."[8]

22.     Plaintiffs and Class Members are current and former patients and/or employees at WellTok's clients.

23.     As a condition of obtaining healthcare services and/or employment at WellTok's clients, Plaintiffs and Class Members were required to entrust Defendants, directly or indirectly, with highly sensitive personal information.

24.     The information held by Defendants in their computer systems or those of their vendors at the time of the Data Breach included the unencrypted Private Information of Plaintiffs and Class Members.

25.     Upon information and belief, Defendants made promises and representations to its clients' patients and employees, including Plaintiffs and Class Members, that the Private Information collected from them as a condition of obtaining healthcare services and/or employment at WellTok's clients would be kept safe, confidential, that the privacy of that

---

[7] https://www.linkedin.com/company/welltok-inc-/
[8] https://www.progress.com/company

information would be maintained, and that Defendants would delete any sensitive information after they were no longer required to maintain it.

26.    Plaintiffs and Class Members provided their Private Information, directly or indirectly, to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

27.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiffs and Class Members relied on the sophistication of Defendants to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

28.    Defendants had duties to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties, and WellTok had a duty to audit, monitor, and verify the integrity of its IT vendors and affiliates. Defendants have a legal duty to keep consumer's Private Information safe and confidential.

29.    Defendants had obligations created by FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiffs and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

30.    Defendants derived a substantial economic benefit from collecting Plaintiffs' and Class Members' Private Information. Without the required submission of Private Information, Defendants could not perform the services they provide.

31.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class

Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

***The Data Breach***

32.    On or about October 31, 2023, WellTok, on behalf of Defendants, began sending Plaintiffs and other Data Breach victims a Notice of Data Breach letter (the "Notice Letter"), informing them that:

> **What Happened.** On July 26, 2023, we were alerted to an earlier alleged compromise of our MOVEit Transfer server in connection with software vulnerabilities made public by the developer of the MOVEit Transfer tool. We had previously installed all published patches and security upgrades immediately upon such patches being made available by Progress Software, the maker of the MOVEit Transfer tool. We also conducted an examination of our systems and networks using all information available to determine the potential impact of the published vulnerabilities' presence on the MOVEit Transfer server and the security of data housed on the server. We confirmed that there was no indication of any compromise at that time.
>
> . . .
>
> **What Information Was Involved.** While we have no evidence that any of your information has been misused, we are notifying you and providing information and resources to help protect your personal information. The following types of your information may have been impacted: your name, date of birth, email address, phone number, health insurance information, and Social Security number.[9]

33.    Omitted from the Notice Letter were any explanation as to why it took WellTok approximately three months to notify Plaintiffs and Class Members of the Data Breach's occurrence after being notified of the cyberattack by PSC, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class Members, who retain a vested interest in ensuring that their Private

---

[9] Notice Letter.

Information remains protected.

34.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

35.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed. Moreover, WellTok failed to exercise due diligence in selecting its IT vendors or deciding with whom it would share sensitive Private Information.

36.     The attacker accessed and acquired files from Defendants containing unencrypted Private Information of Plaintiffs and Class Members, including their Social Security numbers and other sensitive information. Plaintiffs' and Class Members' Private Information was accessed and stolen in the Data Breach.

37.     The Private Information of Plaintiffs and Class Members was or will be subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### Defendants Acquire, Collect, and Store Plaintiff's and Class Members' Private Information

38.     As a condition to obtain healthcare services and/or employment at WellTok's clients, Plaintiffs and Class Members were required to give their sensitive and confidential Private Information, directly or indirectly, to Defendants.

39.     WellTok retains and stores this information with PSC and derives a substantial economic benefit from the Private Information that they collect. But for the collection of Plaintiffs'

and Class Members' Private Information, Defendants would be unable to perform their services.

40.     By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

41.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendants to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

42.     Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiffs and Class Members or by WellTok exercising due diligence in selecting its IT vendors and properly auditing those vendor's security practices.

43.     Upon information and belief, Defendants made promises to Plaintiffs and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

44.     Defendants' negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

   E.     ***Defendants Knew or Should Have Known of the Risk Because Administrative Services Companies and Software Companies In Possession Of Private Information Are Particularly Suspectable To Cyber Attacks***

45.     Data thieves regularly target companies like Defendants' due to the highly sensitive information that they custody. Defendants knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize

that Private Information through unauthorized access.

46.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting administrative services companies and software companies that collect and store Private Information, like Defendants, preceding the date of the breach.

47.     In the third quarter of the 2023 fiscal year alone, 7333 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[10]

48.     In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System (286,876 patients, March 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

49.     Indeed, cyber-attacks, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[11]

---

[10] *See* https://www.idtheftcenter.org/publication/q3-data-breach-2023-analysis/
[11] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-

50.     As custodians of Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class members, and of the foreseeable consequences if their data security systems were breached, including the significant costs imposed on Plaintiffs and Class Members as a result of a breach.

51.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

52.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members and of the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

53.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' servers, amounting to, upon information and belief, more than eight million individuals' detailed Private Information,[12] and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

54.     Additionally, as companies became more dependent on computer systems to run their business,[13] *e.g.*, working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need

---

aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection

[12]    https://www.bleepingcomputer.com/news/security/welltok-data-breach-exposes-data-of-85-million-us-patients/

[13]https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html

for adequate administrative, physical, and technical safeguards.[14]

55.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

56.     The ramifications of Defendants' failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen— particularly Social Security numbers and PHI—fraudulent use of that information and damage to victims may continue for years.

57.     In the Notice Letter, WellTok offers to cover 12 months of credit and identity theft monitoring services for Plaintiffs and Class Members. This is wholly inadequate to compensate Plaintiffs and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information. Moreover, once this service expires, Plaintiffs and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

58.     WellTok's offer of credit and identity monitoring establishes that Plaintiffs' and Class Members' sensitive Private Information *was* in fact affected, accessed, compromised, and exfiltrated from Defendant's, or its vendors, computer systems.

59.     As an administrative services company and a software company in possession of WellTok's clients' patients' and employees' Private Information, Defendants knew, or should have

---

[14]     https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022

known, the importance of safeguarding the Private Information entrusted to them by Plaintiffs and Class Members and of the foreseeable consequences if their data security systems, or those on which it transferred Private Information, were breached. This includes the significant costs imposed on Plaintiffs and Class Members as a result of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

### *Value Of Private Information*

60.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[15] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[16]

61.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[17]

62.    For example, PII can be sold at a price ranging from $40 to $200.[18] Criminals can

---

[15] 17 C.F.R. § 248.201 (2013).

[16] *Id.*

[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/

[18] *Here's How Much Your Private Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/

also purchase access to entire company data breaches from $900 to $4,500.[19]

63.    Social Security numbers are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiffs and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[20]

64.    What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

65.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

66.    Theft of PHI is also gravely serious: "[a] thief may use your name or health

---

[19] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ .
[20] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf

insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[21]

67.     The greater efficiency of electronic health records brings the risk of privacy breaches. These electronic health records contain a lot of sensitive information (*e.g.,* patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites. Unsurprisingly, the healthcare industry is at high risk and is acutely affected by cyberattacks, like the Data Breach here.

68.     Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[22] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[23] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[24]

69.     According to account monitoring company LogDog, medical data sells for $50

---

[21]     *Medical          I.D.          Theft*,          EFraudPrevention https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20you r,credit%20report%20may%20be%20affected.

[22] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/

[23] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/

[24]          https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-incovid-19-era-breaches/

and up on the Dark Web.[25]

70.     "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[26]

71.     A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[27] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[28]

72.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—names, dates of birth, PHI, and Social Security numbers.

73.     This data demands a much higher price on the black market. Martin Walter, senior

---

[25] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content

[26] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/

[27] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/

[28] *Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One,* EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-toknow-about-them-and-what-to-do-after-one/

director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[29]

74.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

75.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[30]

***Defendants Failed to Comply with FTC Guidelines***

76.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

---

[29] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers,* IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html
[30] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf

77. In October 2016, the FTC updated its publication, Protecting Private Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

78. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

79. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80. These FTC enforcement actions include actions against administrative services companies and software companies, like Defendants.

81. As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices, and WellTok failed to audit, monitor, or ensure the integrity of its vendor's

data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

82. Defendants were at all times fully aware of their obligations to protect the Private Information of the patients and employees in their networks yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

### *WellTok Failed to Comply with HIPAA Guidelines*

83. WellTok is a covered business associate under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

84. WellTok is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[31] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

85. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

86. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

---

[31] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

87.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

88.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

89.    HIPAA's Security Rule requires WellTok to do the following:

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.    Ensure compliance by its workforce.

90.    HIPAA also requires WellTok to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, WellTok is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

91.    HIPAA and HITECH also obligated WellTok to implement policies and

procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

92.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires WellTok to provide notice of the Data Breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***."[32]

93.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

94.     HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

95.     HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements

---

[32]     Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[33] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[34]

### *Defendants Failed to Comply with Industry Standards*

96.    As noted above, experts studying cybersecurity routinely identify administrative services companies and software companies as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

97.    Some industry best practices that should be implemented by administrative services companies and software companies dealing with sensitive Private Information, like Defendants, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

98.    Other best cybersecurity practices that are standard in the administrative services and software industries include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach,

---

[33] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.
[34]                    https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html

Defendants failed to follow these cybersecurity best practices.

99.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

100.    Defendants failed to comply with these accepted standards in the administrative services and software industries, thereby permitting the Data Breach to occur.

***Defendants Breached Their Duties to Safeguard Plaintiffs' and the Class's Private Information***

101.    In addition to their obligations under federal and state laws, Defendants owed duties to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed duties to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class Members

102.    Defendants breached their obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data, and WelllTok failed to audit, monitor, or ensure the integrity of its vendor's data security practices. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.    Failing to maintain an adequate data security system that would reduce the risk of

data breaches and cyberattacks;

b.    Failing to adequately protect WellTok's clients' patients' and employees' Private Information;

c.    Failing to properly monitor their own data security systems for existing intrusions;

d.    Failing to sufficiently train their employees and vendors regarding the proper handling of WellTok's clients' patients' employees' Private Information;

e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f.    Failing to adhere to HIPAA guidelines and industry standards for cybersecurity as discussed above; and,

g.    Otherwise breaching their duties and obligations to protect Plaintiffs' and Class Members' Private Information.

103.    Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access their computer networks and systems which contained unsecured and unencrypted Private Information.

104.    Had Defendants remedied the deficiencies in their information storage and security systems or those of their vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, they could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

*Common Injuries & Damages*

105.    As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession

of criminals, the risk of identity theft to the Plaintiffs and Class Members has materialized and is imminent, and Plaintiffs and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

**The Data Breach Increases Victims' Risk Of Identity Theft**

106.    Plaintiffs and Class Members are at a heightened risk of identity theft for years to come.

107.    The unencrypted Private Information of Plaintiffs and Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the Private Information of Plaintiffs and Class Members.

108.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other

criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

109.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity--or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

110.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victim.

111.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[35]

---

[35] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than WellTok credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-](https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-finn/

112.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

113.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

114.    The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like driver's license numbers) of Plaintiffs and the other Class Members.

115.    Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

116.    Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

### *Loss Of Time To Mitigate Risk Of Identity Theft And Fraud*

117.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim

of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

118.    Thus, due to the actual and imminent risk of identity theft, WellTok, in its Notice Letter, instructs Plaintiffs and Class Members to take the following measures to protect themselves:

> We encourage you to remain vigilant against incidents of identity theft and fraud by regularly reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors. You may also review the information contained in the enclosed *Steps You Can Take to Help Protect Your Information*. There you will also find more information on the credit monitoring and identity restoration services we are making available to you. While Welltok will cover the cost of these services, you will need to complete the activation process. Enrollment instructions are included in this letter.[36]

119.    Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter as well as monitoring their financial accounts for any indication of fraudulent activity, which may take years to detect.

120.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[37]

121.    These efforts are also consistent with the steps that FTC recommends that data

---

[36] Notice Letter.

[37] *See* United States Government Accountability Office, GAO-07-737, Private Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[38]

122.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[39]

**_Diminution Value Of Private Information_**

123.    PII and PHI are valuable property rights.[40] Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

124.    An active and robust legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion.[41]

125.    In fact, the data marketplace is so sophisticated that consumers can actually sell

---

[38] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

[39] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf ("GAO Report").

[40] *See, e.g.,* Randall T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[41] https://www.latimes.com/business/story/2019-11-05/column-data-brokers

their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[42,43]

126.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[44]

127.    Conversely sensitive PII can sell for as much as $363 per record on the dark web according to the Infosec Institute.[45]

128.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[46]

129.    According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[47]

130.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property,

---

[42] https://datacoup.com/
[43] https://digi.me/what-is-digime/
[44]    Nielsen Computer & Mobile Panel, *Frequently Asked Questions, available at* https://computermobilepanel.nielsen.com/ui/US/en/faqen.html
[45] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/
[46]    *Medical    I.D.    Theft*,    EFraudPrevention https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20you r,credit%20report%20may%20be%20affected.
[47]    Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content

resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

131.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change, e.g., names, dates of birth, PHI, and Social Security numbers.

132.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

133.    The fraudulent activity resulting from the Data Breach may not come to light for years.

134.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

135.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' networks, amounting to more than eight million individuals' detailed personal information, upon information and belief, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

136.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

***Future Cost of Credit & Identity Theft Monitoring is Reasonable and Necessary***

137.     Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes –*e.g.,* opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

138.     Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

139.     Consequently, Plaintiffs and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

140.     The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendants' Data Breach.

***Loss Of The Benefit Of The Bargain***

141.     Furthermore, Defendants' poor data security deprived Plaintiffs and Class Members of the benefit of their bargain. When agreeing to obtain healthcare services and/or accept employment at WellTok's clients, Plaintiffs and other reasonable consumers understood and expected that they were, in part, paying for, or being paid less for, the necessary data security to

protect the Private Information, when in fact, Defendants did not provide the expected data security. Accordingly, Plaintiffs and Class Members received healthcare services and/or employment positions that were of a lesser value than what they reasonably expected to receive under the bargains they struck with WellTok's clients.

## PLAINTIFFS' EXPERIENCES

### *Plaintiff Denise Meyer*

142.    Plaintiff Denise Meyer is a current patient and former employee at Sutter Health, which, upon information and belief, contracted with WellTok for services.

143.    In order to obtain healthcare services and employment at Sutter Health, Plaintiff was required to provide her Private Information, directly or indirectly, to Defendants, including her name, date of birth, health insurance information, Social Security number, and other sensitive information.

144.    At the time of the Data Breach—on or about May 30, 2023—Defendants retained Plaintiff's Private Information in their systems.

145.    Plaintiff Meyer is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted her Private Information to Defendants had she known of Defendants' lax data security policies.

146.    Plaintiff Meyer received the Notice Letter, by U.S. mail, from WellTok, dated October 31, 2023. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties, including her name, date of birth, health insurance information, provider name, treatment cost information, and treatment information or

diagnosis.

147.    As a result of the Data Breach, and at the direction of the Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter as well as monitoring her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff has spent significant time on reasonable efforts to mitigate the impact of the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

148.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

149.    Plaintiff further suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

150.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has

been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

151.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

152.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

153.    Plaintiff Meyer has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**Plaintiff Tamara Williams**

154.    Plaintiff Tamara Williams is a current patient at Corwell Health East, which, upon information and belief, contracted with WellTok for services.

155.    In order to obtain healthcare services at Sutter Health, Plaintiff was required to provide her Private Information, directly or indirectly, to Defendants, including her name, date of birth, health insurance information, Social Security number, and other sensitive information.

156.    At the time of the Data Breach—on or about May 30, 2023—Defendants retained Plaintiff's Private Information in their systems.

157.    Plaintiff Williams is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted her Private Information to Defendants had she known of Defendants' lax data security policies.

158.    Plaintiff Williams received the Notice Letter, by U.S. mail, from WellTok, dated

October 31, 2023. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties, including her name, date of birth, email address, phone number, health insurance information, and Social Security number.

159.    As a result of the Data Breach, and at the direction of the Notice Letter, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter. Plaintiff has spent significant time on reasonable efforts to mitigate the impact of the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

160.    Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

161.    Plaintiff further suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

162.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

163.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

164.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

165.    Plaintiff Williams has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

166.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

167.    Specifically, Plaintiffs propose the following Class definition, subject to amendment as appropriate:

**Nationwide Class**
All individuals in the United States whose Private Information was impacted as a result of the Data Breach (the "Class").

168.    In addition, Plaintiff Meyer proposes the following California Subclass, subject to amendment as appropriate:

**California Subclass**
All individuals in the state of California whose Private Information was impacted as a result of the Data Breach (the "California Subclass").

169.    Similarly, Plaintiff Williams proposes the following Michigan Subclass, subject to amendment as appropriate:

**Michigan Subclass**
All individuals in the state of Michigan whose Private Information was impacted as a result of the Data Breach (the "Michigan Subclass").

170.    Excluded from the Classes are Defendants and their parents or subsidiaries, any entities in which it has a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

171.    Plaintiffs reserve the right to modify or amend the definition of the proposed Nationwide Class, California Subclass, and/or Michigan Subclass, as well as add subclasses, before the Court determines whether certification is appropriate.

172.    The proposed Classes meet the criteria for certification under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

173.    <u>Numerosity:</u> The Class Members are so numerous that joinder of all members is impracticable. Although the exact number of Class Members is currently unknown to Plaintiffs and exclusively in the possession of Defendants, upon information and belief, more than eight million persons were impacted in the Data Breach.[48] The Class is apparently identifiable within Defendants' records, and Defendants have already identified these individuals (as evidenced by WellTok sending them Notice Letters).

174.    <u>Commonality:</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendants engaged in the conduct alleged herein;

---

[48]    https://www.bleepingcomputer.com/news/security/welltok-data-breach-exposes-data-of-85-million-us-patients/

b.    Whether Defendants' conduct violated the FTCA and/or HIPAA;

c.    When Defendants learned of the Data Breach;

d.    Whether Defendants' response to the Data Breach was adequate;

e.    Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.    Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.    Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

i.    Whether Defendants owed duties to Class Members to safeguard their Private Information;

j.    Whether Defendants breached their duty to Class Members to safeguard their Private Information;

k.    Whether hackers obtained Class Members' Private Information via the Data Breach;

l.    Whether Defendants had legal duties to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m.    Whether Defendants breached their duties to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n.    Whether Defendants knew or should have known that their data security systems

and monitoring processes were deficient;

o.    What damages Plaintiffs and Class Members suffered as a result of Defendants' misconduct;

p.    Whether Defendants' conduct was negligent;

q.    Whether Defendants were unjustly enriched;

r.    Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

s.    Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t.    Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

175.    <u>Typicality:</u> Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

176.    <u>Adequacy of Representation:</u> Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

177.    <u>Predominance:</u> Defendants have engaged in a common course of conduct toward

Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

178.    <u>Superiority:</u> A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

179.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

180.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent Notice Letters by WellTok.

## COUNT I
### Negligence
### (On Behalf of Plaintiffs and the Class against Defendants)

181.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs, as if fully set forth herein, and bring this claim against both Defendants.

182.    WellTok requires its clients' patients and employees, including Plaintiffs and Class Members, to submit non-public Private Information to Defendants in the ordinary course of providing its services.

183.    Defendants gathered and stored the Private Information of Plaintiffs and Class Members as part of their businesses of soliciting their services to their clients, which solicitations and services affect commerce.

184.    Plaintiffs and Class Members entrusted Defendants, directly or indirectly, with their Private Information with the understanding that Defendants would safeguard their information.

185.    Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information were wrongfully disclosed.

186.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendants owed duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft. WellTok's duty included a responsibility to exercise due diligence in selecting IT vendors and to audit, monitor, and ensure the integrity of its vendor's systems and practices and to give prompt notice to those affected in the case of a data breach.

187.    Defendants had duties to employ reasonable security measures under Section 5

of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

188.    WellTok's duty to use reasonable security measures under HIPAA required WellTok to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

189.    For instance, HIPAA required WellTok to notify victims of the Breach within 60 days of the discovery of the Data Breach. WellTok did not begin to notify Plaintiffs or Class Members of the Data Breach until October 31, 2023, despite, upon information and belief, WellTok knowing shortly after July 26, 2023 that unauthorized persons had accessed and acquired the private, protected, personal information of Plaintiffs and the Class.

190.    Defendants owed duties of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

191.    Defendants' duties of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiffs and Class Members. That special relationship arose because Plaintiffs and the Class entrusted Defendants with their confidential Private Information, a necessary part of being employees and/or patients at WellTok's clients.

192.    Defendants' duties to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

193.    Defendants were subject to an "independent duty," untethered to any contract between Defendants and Plaintiffs or the Class.

194.    Defendants also had duties to exercise appropriate clearinghouse practices to remove former employees' and patients' Private Information it was no longer required to retain pursuant to regulations.

195.    Moreover, Defendants had duties to promptly and adequately notify Plaintiffs and the Class of the Data Breach.

196.    Defendants had and continues to have duties to adequately disclose that the Private Information of Plaintiffs and the Class within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

197.    Defendants breached their duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.  Failing to adequately monitor the security of their networks and systems;

c.  Failing to audit, monitor, or ensure the integrity of their vendor's data security practices;

d.  Allowing unauthorized access to Class Members' Private Information;

e.  Failing to detect in a timely manner that Class Members' Private Information had been compromised;

f.  Failing to remove former employees' and patients' Private Information it was no longer required to retain pursuant to regulations,

g.  Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

h.  Failing to secure their stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

198.  Defendants violated Section 5 of the FTC Act and HIPAA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

199.  Plaintiffs and Class Members were within the class of persons the Federal Trade Commission Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

200.  Defendants' violation of Section 5 of the FTC Act and WellTok's violation of HIPAA constitutes negligence.

201.  The FTC has pursued enforcement actions against businesses, which, as a result

of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

202.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

203.    It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the administrative services and software industries.

204.    Defendants have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if the Private Information were wrongfully disclosed.

205.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendants' systems.

206.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

207.    Plaintiffs and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendants' possession.

208.    Defendants were in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

209.    Defendants' duties extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

210.    WellTok has admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

211.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiffs and the Class, the Private Information of Plaintiffs and the Class would not have been compromised.

212.    There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The Private Information of Plaintiffs and the Class was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

213.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase

in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

214.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

215.    Additionally, as a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

216.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

217.    Defendants' negligent conduct is ongoing, in that it still holds the Private Information of Plaintiffs and Class Members in an unsafe and insecure manner.

218.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
### Breach of Third-Party Beneficiary Contract
### (On Behalf of Plaintiffs and the Class against Defendant WellTok)

219.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein and brings this count solely against Defendant WellTok ("Defendant" for the purposes of this count).

220.    Defendant entered into written contracts with its clients, including Sutter Health and Corewell Health East, to provide administrative services.

221.    In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiffs and the Class and to timely and adequately notify them of the Data Breach.

222.    These contracts were made expressly for the benefit of Plaintiffs and the Class, as Plaintiffs and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its clients. Defendant knew that, if it were to breach these contracts with its clients, the clients' patients and employees—Plaintiffs and Class Members—would be harmed.

223.    Defendant breached the contracts it entered into with its clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately notify Plaintiffs and Class Members of the Data Breach.

224.    Plaintiffs and the Class were harmed by Defendant's breach of its contracts with its clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

225.    Plaintiffs and Class Members are also entitled to their costs and attorney's fees incurred in this action.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class against Defendants)

226.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs, as if fully set forth herein, and bring this claim against both Defendants.

227.    Plaintiffs and Class Members conferred a monetary benefit on Defendants. Specifically, they paid for or had payments made on their behalf for services from WellTok's clients and/or provided labor to WellTok's clients as well as provided Defendants with their Private Information. In exchange, Plaintiffs and Class Members should have received from WellTok's clients the services and/or employment position that were the subject of the transaction and should have had their Private Information protected with adequate data security.

228.    Defendants knew that Plaintiffs and Class Members conferred a benefit upon them and have accepted and retained that benefit by accepting and retaining the Private Information entrusted to them. Defendants profited from Plaintiffs' retained data and used Plaintiffs' and Class Members' Private Information for business purposes.

229.    Defendants failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

230.    Defendants acquired the Private Information through inequitable record retention as they failed to disclose the inadequate data security practices previously alleged.

231.    If Plaintiffs and Class Members had known that Defendants would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and

secure their Private Information, they would have entrusted their Private Information at Defendants or obtained employment and/or healthcare services at WellTok's clients.

232.    Plaintiffs and Class Members have no adequate remedy at law.

233.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

234.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

235.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

236.    Plaintiffs and Class Members may not have an adequate remedy at law against

Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT IV
### Violation of the California Consumer Privacy Act,
### Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a)
### (On Behalf of Plaintiff Meyer and the California Subclass against Defendant WellTok)

237.    Plaintiff Meyer ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the California Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

238.    The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA.  Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

>> (A)  To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

>> (B)  Injunctive or declaratory relief.

>> (C)  Any other relief the court deems proper.

239.    Defendant is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

240.    Plaintiff and Class Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

241.    The personal information of Plaintiff and the Class Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information

Defendant collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

242.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the Class Members' personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the Class Members. Specifically, Defendant subjected Plaintiff's and the Class Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

243.    As a direct and proximate result of Defendant's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and Class Members' personal information included exfiltration, theft, or disclosure through Defendant's servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

244.    As a direct and proximate result of Defendant's acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

245.    Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages."

246.    On November 28, 2023, Plaintiff provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). If Defendant fails to respond, has not cured, or is unable to cure the violation within 30 days thereof, Plaintiff will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

247.    Accordingly, Plaintiff and the California Subclass Members by way of this complaint seek actual pecuniary damages suffered as a result of Defendant's violations described herein.

**COUNT V**
**Violation of California's Unfair Competition Law ("UCL")**
**Unlawful Business Practice**
**Cal Bus. & Prof. Code § 17200,** *et seq.*
**(On Behalf of Plaintiff Meyer and the California Subclass against Defendant WellTok)**

248.    Plaintiff Meyer ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the California Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

249.    By reason of the conduct alleged herein, Defendant engaged in unfair and unlawful "business practices" within the meaning the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*

250.    Defendant stored the Private Information of Plaintiff and the Class Members in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff's and the Class Members' Private Information a secure and prevented the loss

or misuse of that Private Information.

251.    Plaintiff and Class Members were entitled to assume, and did assume, Defendant would take appropriate measures to keep their Private Information safe.

252.    Defendant did not disclose at any time that Plaintiff's Private Information was vulnerable to hackers because Defendant's data security measures were inadequate and outdated, and Defendant was the only entity in possession of that material information, which it had a duty to disclose.

253.    Defendant violated the UCL by failing to maintain the safety of its computer systems, specifically the security thereof, and its ability to safely store Plaintiff's and Class Members' Private Information.

254.    Defendant violated the UCL by failing to implement reasonable and appropriate security measures or follow industry standards for data security, failing to comply with its own posted privacy policies, failing to audit, verify, and monitor the data security practices of its vendors, and by failing to immediately timely and adequately notify Plaintiff and Class Members of the Data Breach.

255.    Section 5 of the FTCA required Defendant to take reasonable measures to protect Plaintiff's and the Class Member's Private Information data and is a further source of Defendant's duty to Plaintiff and the Class Members.

256.    Section 5 prohibits unfair practices in or affecting commerce, including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to implement and use reasonable measures to protect Sensitive Information. Defendant, therefore, was required and obligated to take reasonable measures to protect Private Information it solicited, possessed, held, or otherwise used. The FTC publications and data security breach

orders described herein further form the basis of Defendant's duty to adequately protect Sensitive

Information. By failing to implement and use reasonable data security measures, Defendant acted

in violation of § 5 of the FTCA.

257.    Defendant's duty to use reasonable security measures under HIPAA required

Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or

disclosure" and to "have in place appropriate administrative, technical, and physical safeguards

to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of

the healthcare and/or medical information at issue in this case constitutes "protected health

information" within the meaning of HIPAA.

258.    Defendant's acts, omissions, and misrepresentations as alleged herein were

unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act and

HIPAA.

259.    If Defendant had complied with these legal requirements, Plaintiff and Class

Members would not have suffered the damages related to the Data Breach, and consequently

from, Defendant's failure to timely notify Plaintiff and the Class Members of the Data Breach.

260.    Moreover, Defendant's collection of sensitive patients' Private Information in

combination with its failure to implement reasonable security safeguards demonstrate

Defendant's violation of the unfair prong of the UCL.

261.    Defendant violated the unfair prong of the UCL by establishing the sub-standard

security practices and procedures described herein; by soliciting and collecting Plaintiff's and

Class Members' Private Information with knowledge that the information would not be

adequately protected; and by storing Plaintiff's and Class Members' Private Information in an

unsecure electronic environment. These unfair acts and practices were immoral, unethical,

oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. They were likely to deceive the public into believing their Private Information was securely stored when it was not. The harm these practices caused to Plaintiff and Class Members outweighed their utility, if any.

262.    Plaintiff and Class Members have lost money and property as a result of Defendant's violations of the UCL as they were denied the benefit of their transacting with Defendant because Defendant failed to use funds from money paid by Plaintiff and Class Members to supply adequate data security.

263.    Moreover, Plaintiff and Class Members provided their Private Information to Defendant, which is property as defined by the UCL, and their property has been diminished in value as a result of the loss of its confidentiality.

264.    Plaintiff and Class Members have also suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

265.    Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur.

266.    As such, Plaintiff, on behalf of herself and Class Members, seeks restitution and an injunction, including public injunctive relief prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to it, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code § 17203.

267.    To the extent any of these remedies are equitable, Plaintiff and the Class seek such equitable remedies, in the alternative to any adequate remedy at law they may have.

## COUNT VI
### Violation of the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*
### (On Behalf of Plaintiff Meyer and the California Subclass against Defendant WellTok)

268.    Plaintiff Meyer ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the California Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

269.    At all relevant times, Defendant was healthcare contractor for the purposes of this cause of action because they had the "purpose of maintaining medical information to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual."

270.    Defendant is a healthcare contractor for the purposes of this cause of action

within the meaning of Civil Code § 56.06(a) and maintains medical information as defined by Civil Code § 56.05. 161. Plaintiff and Class Members are patients of Defendant for the purposes of this cause of action, as defined in Civil Code § 56.05(k).

271.    Plaintiff and Class Members provided their Private Information to Defendant as a condition of receiving healthcare services at Defendant's clients.

272.    At all relevant times, Defendant collected, stored, managed, and transmitted Plaintiff's and Class Members' personal medical information.

273.    Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

274.    As a result of the Data Breach, Defendant misused, disclosed, and/or allowed third parties to access and view Plaintiff's and Class Members' personal medical information without their written authorization compliant with the provisions of Civil Code §§ 56, *et seq.*

275.    As a further result of the Data Breach, the confidential nature of the Plaintiff's and Class Members' medical information was breached as a result of Defendant's negligence. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access, view, and use Plaintiff's and Class Members' PHI.

276.    Defendant's misuse and/or disclosure of medical information regarding Plaintiff and Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and 56.26.

277.    As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class Members' personal medical information was disclosed without written authorization.

278.     By disclosing Plaintiff's and Class Members' PHI without their written authorization, Defendants violated California Civil Code § 56, *et seq.* and its legal duties to protect the confidentiality of such information.

279.     Defendants also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

280.     As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members' written authorization.

281.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CMIA, Plaintiff and Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, and (iii) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

### COUNT VII
**Violation of the California Customer Records Act,**
**Cal. Civ. Code §§ 1798.80 *et seq.***
**(On Behalf of Plaintiff Meyer and the California Subclass against Defendant WellTok)**

282.     Plaintiff Meyer ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the California Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

283.     Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose

of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

284.    Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

285.    Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages."  Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

286.    Plaintiff and the Class Members are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendant for the purpose of obtaining healthcare services from Defendant's clients.

287.    The personal information of Plaintiff and the Class Members at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information Defendant collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric

data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

288.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the Plaintiff's and Class Members' personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the Class Members. Specifically, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiff and the Class Members from unauthorized access, destruction, use, modification, or disclosure. Defendant further subjected Plaintiff's and the Class Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

289.    As a direct and proximate result of Defendant's violation of their duties, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiff and the Class Members included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiff and the Class Members by the cyber attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

290.    As a direct and proximate result of Defendant's acts or omissions, Plaintiff and the Class Members were injured and lost money or property including, but not limited to, the loss of Plaintiff's and the Class Members' legally protected interest in the confidentiality and privacy

of their personal information, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

291.    Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82.

292.    Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

a.   The name and contact information of the reporting person or business subject to this section;

b.   A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

c.   If the information is possible to determine at the time the notice is provided, then any of the following:

i.   the date of the breach,

ii.   the estimated date of the breach, or

iii.   the date range within which the breach occurred. The notification shall also include the date of the notice;

d.   Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e.   A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g. If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

293.    Defendant failed to provide the legally compliant notice under § 1798.82(d) to Plaintiff and members of the Class. On information and belief, to date, Defendant has not sent written notice of the data breach to all impacted individuals. As a result, Defendant has violated § 1798.82 by not providing legally compliant and timely notice to all Class Members. Because not all members of the class have been notified of the breach, members could have taken action to protect their personal information, but were unable to do so because they were not timely notified of the breach.

294.    On information and belief, many Class Members affected by the breach have not received any notice at all from Defendant in violation of Section 1798.82(d).

295.    As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

296.    As a direct consequence of the actions as identified above, Plaintiff and Class Members incurred additional losses and suffered further harm to their privacy, including but not

limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

**COUNT VIII**
**Invasion of Privacy**
**Cal. Const. Art. 1 § 1**
**(On Behalf of Plaintiff Meyer and the California Subclass against Defendant WellTok)**

297.     Plaintiff Meyer ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the California Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

298.     California established the right to privacy in Article I, Section 1 of the California Constitution.

299.     Plaintiff and the Class had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

300.     Defendant owed a duty to its clients' current and former patients and employees, including Plaintiff and the Class, to keep their Private Information contained as a part thereof, confidential.

301.     Defendant failed to protect and released to unknown and unauthorized third parties the Private Information and of Plaintiff and the Class.

302.    Defendant allowed unauthorized and unknown third parties access to and examination of the Private Information of Plaintiff and the Class, by way of Defendant's failure to protect the Private Information.

303.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and the Class is highly offensive to a reasonable person.

304.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and the Class disclosed their Private Information to Defendant as part of obtaining healthcare services at Defendant's clients, but privately with an intention that the Private Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

305.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

306.    Defendant acted with a knowing state of mind when they permitted the Data Breach to occur because they were with actual knowledge that its information security practices were inadequate and insufficient.

307.    Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class.

308.    As a proximate result of the above acts and omissions of Defendant, the Private Information of Plaintiff and the Class was disclosed to third parties without authorization, causing

Plaintiff and the Class to suffer damages.

309.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class in that the Private Information and maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come.

310.    Plaintiff, on behalf of the Class, seeks injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

311.    Plaintiff's and Class Members' Private Information, which remains in Defendant's possession, will be subject to further disclosure unless and until this Court compels Defendant to audit and strengthen the security of its data systems.

## COUNT IX
### Violation of the Michigan Identity Theft Protection Act
### Mich. Comp. Laws Ann. §§ 445.72, *et seq.*
### (On Behalf of Plaintiff Williams and the Michigan Subclass against Defendant WellTok)

312.    Plaintiff Williams ("Plaintiff" for the purposes of this count) re-alleges and incorporates by reference all preceding paragraphs, as if fully set forth herein, and brings this claim on behalf of herself and the Michigan Subclass (the "Class" for the purposes of this count) solely against Defendant WellTok ("Defendant" for the purposes of this count).

313.    Defendant is a business that owns or licenses computerized data that includes PII as defined by Mich. Comp. Laws Ann. § 445.72(1).

314.    Plaintiff's and Class Members' personal information (for the purpose of this count, "PII"), (e.g., Social Security numbers) includes PII as covered under Mich. Comp. Laws Ann. § 445.72(1).

315. Defendant is required to accurately notify Plaintiff and Class Members if it discovers a security breach or receives notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), without unreasonable delay under Mich. Comp. Laws Ann. § 445.72(1).

316. Because Defendant discovered a security breach and had notice of a security breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Mich. Comp. Laws Ann. § 445.72(4).

317. By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated Mich. Comp. Laws Ann. § 445.72(4).

318. As a direct and proximate result of Defendants' violations of Mich. Comp. Laws Ann. § 445.72(4), Plaintiff and Class Members suffered damages, as described above.

319. Plaintiff and Class Members seek relief under Mich. Comp. Laws Ann. § 445.72(13), including a civil fine.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendants and that the Court grants the following:

A. For an Order certifying this action as a class action and appointing Plaintiffs and her counsel to represent the Class and subclasses, pursuant to Federal Rule of Civil Procedure 23;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

C.   For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

    i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

    iv.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

    v.    prohibiting Defendants from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

    vi.    requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and

audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

ix.    requiring Defendants to conduct regular database scanning and securing checks;

x.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xi.    requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.    requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiii.    requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.    requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.    requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

xvi.    for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of actual damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

E.    For an award of punitive damages, as allowable by law;

F.    For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

G.    Pre- and post-judgment interest on any amounts awarded; and

H.    Such other and further relief as this court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.


DATED:  November 29, 2023                    Respectfully submitted,

                                             */s/ Randi Kassan*
                                             Randi Kassan
                                             **MILBERG COLEMAN BRYSON
                                             PHILLIPS GROSSMAN, LLC**
                                             100 Garden City Plaza
                                             Garden City, NY 11530
                                             Telephone: (212) 594-5300
                                             rkassan@milberg.com

                                             *Counsel for Plaintiffs and the Proposed Class*